UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTIEN MARTIN #794831,   Case No. 2:18-cv-00173

    Plaintiff,   Hon. Gordon J. Quist
                                                         U.S. District Judge
v.

ORSON CARDON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Christien Martin pursuant to 42 U.S.C. § 1983. Martin alleges Eighth Amendment deliberate indifference claims against the three remaining Defendants: Dr. Downs and Correctional Officers Goings and MacDonald.[1] Martin also asserts a medical malpractice claim against Dr. Downs.

Dr. Downs has filed a motion for summary judgment asking the Court to dismiss all of Martin's claims against him. (ECF No. 27.) Correctional Officers Goings and MacDonald have also filed a motion for summary judgment. (ECF Nos. 32 (corrected motion, replacing ECF No. 29).) They argue that Martin failed to

---

[1] Another Defendant – Dr. Cardon – was dismissed by the Court in its screening opinion. (ECF Nos. 5 and 6.)

1

exhaust all administrative remedies regarding the deliberate indifference claims against them.

Martin has responded to Dr. Downs's motion. (ECF Nos. 33 and 34.) He has not responded to Goings and MacDonald's motion.

Dr. Downs has filed a reply to Martin's response.

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court (1) grant Dr. Downs' motion for summary judgment and dismiss Dr. Downs from the case, and (2) deny Correctional Officers Goings and MacDonald's motion for summary judgment.

II.  **Summary of Martin's Allegations and Relevant Facts**

On or about September 24, 2015, Martin underwent oral surgery to repair a fracture to his mandible. (ECF No. 28, PageID.142.) Dr. Cardon, his then-surgeon, affixed a metal plate to Martin's broken mandible with screws.

In May 2017, MDOC medical staff determined that Martin was suffering from an infection caused by the implanted plate and screws. (*Id.*, PageID.149.) To treat the infection, Dr. Downs prescribed Martin a month-long regimen of antibiotics and Ibuprofen. (ECF No. 28, PageID.152.) During a follow-up visit with Dr. Downs, it was determined that the plate and screws should be removed to prevent future infections. (*Id.*, PageID.173.)

On July 27, 2017, Martin underwent a second oral surgery to remove the plate and screws. (ECF No. 1, PageID.6.) On July 28, 2017, Dr. Downs provided Martin with a three-day prescription of pain medication. (*Id.*, PageID.7.)

Martin alleges that a nurse issued him a medical detail – with an expiration of August 1, 2017 – that authorized him to access the medical center. (*Id.*) Martin alleges that the detail also authorized him to receive pain medication and ice. (*Id.*)

Martin says that, on July 30, 2017, C.O. Goings refused to honor the detail and told Martin to try again later. (*Id.*) An hour later, according to Martin, C.O. Goings and C.O. MacDonald again refused Martin and told Martin that the detail had expired. (ECF No. 1, PageID.7.) Martin says that he eventually was allowed to go to medical, but he claims that he endured "approximately six hours of temporary delayed medical treatment" due to their refusals. (*Id.*, PageID.9.)

Also on July 30, 2017, Martin filed grievance **URF-17-07-2303-17z**. (ECF No. 30-2, PageID.231.) The grievance complained about C.O. Goings' and C.O. MacDonald's conduct earlier that day. (*Id.*)

On August 2, 2017, Prison Counselor (PC) Hetrick investigated the allegations in this grievance and found that no violation had occurred. (*Id.*, PageID.232.) Hetrick's Step I response reminded staff that they should "call Health Services anytime a prisoner asks to see them and log it in the log book, the time and the RN they spoke to." (*Id.*)

On June 28, 2018, almost a year later, Martin filed an appeal of Hetrick's decision to Step II. (*Id.*, PageID.229.) Warden Connie Horton rejected the appeal for being untimely. (*Id.*, PageID.230.)

About a week later, on July 5, 2018, Martin filed a Step III appeal. (*Id.*, PageID.229.) Grievance Manager Russell, manager of the Michigan Department of

Corrections (MDOC) Grievance Section, denied Martin's Step III appeal on the merits, determining that the issue was investigated and the correct decision was rendered. (*Id.*, PageID.228.)

On October 4, 2018, Martin filed this action in the United States District Court, Western District of Michigan. (ECF No. 1.) Martin alleges claims of medical malpractice and Eighth Amendment deliberate indifference against Dr. Cardon and Dr. Downs. (*Id.*, PageID.3-15.) The claims against Dr. Cardon are based upon his failure to prevent infections after he implanted hardware in Martin's jaw. (*Id.*, PageID.13-15.) The claims against Dr. Downs are based upon his alleged failure to adequately prescribe pain medication after Martin's second oral surgery. (*Id.*, PageID.6, 10-15.) Martin also asserts claims of Eighth Amendment deliberate indifference against Goings and MacDonald. (ECF No. 1, PageID.13.) The claims against Goings and MacDonald are based upon their alleged conduct on July 30, 2017. (*Id.*)

On November 29, 2018, the Court dismissed both claims against Dr. Cardon for failure to state a claim. (ECF No. 5.) Regarding the Eighth Amendment deliberate indifference claim, the Court held that the claim "f[e]ll far short of demonstrating deliberate indifference" because "[t]he fact that the surgical plate became infected in 2017 does not in and of itself support an inference Cardon's medical treatment in 2015 was deficient in any way – much less that the surgery was 'so woefully inadequate as to amount to no treatment at all.' *Mitchell v. Hininger*, 553 F. App'x 602, 605 (internal quotation omitted)." (*Id.*, PageID.62.) Regarding the

4

medical malpractice claim, the Court held that the claim is not actionable under § 1983 and that the claim is time-barred. (*Id.*, PageID.62-63.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. Martin's Deliberate Indifference Claim Against Dr. Downs

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious

5

medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Id.* at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial

6

risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of \*739 *serious* harm."

*Id.* 738–39 (6th Cir. 2018) (internal citations omitted).

7

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort

8

law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Dr. Downs asserts that Martin's Eighth Amendment deliberate indifference claim does not satisfy either the objective or subjective elements. (ECF No. 27, PageID.113-114.) The undersigned agrees

The record contains facts that show that no genuine issue of material fact exists as to the objective component of his deliberate indifference claim. It is undisputed that Martin underwent surgery on July 27, 2017, developed an infection and experienced considerable pain as a result. But the record shows that he was issued pain medication before and after surgery and an antibiotic after an infection developed.

First, as shown below, Nurse Practitioner (NP) Brenda Buchanan preemptively ordered pain medication for Martin on July 26, the day before his surgery.[2]

```
PATIENT: MARTIN, CHRISTIEN
LOCATION: URF E
PROVIDER: Brenda L. Buchanan NP
CURRENT USER: Brenda L. Buchanan, NP

                        MEDICATION ORDERS

NEW AND RENEWED MEDICATION ORDERS  07/26/2017 1:14 PM

Start Date   Stop Date    Medication          Dose      Sig Desc
07/26/2017   08/02/2017   Ibuprofen           200 Mg    Take 3 tablets by mouth tid DISPENSE FROM STOCK-
written for DR. Downs oral surgery

MEDICATIONS STOPPED THIS ENCOUNTER

Start Date   Stop Date    Medication          Dose      Sig Desc
07/26/2017   07/26/2017   Ibuprofen           200 Mg
```

(ECF No. 28, PageID.181, 183.)

Second, the records show that NP Buchanan contacted Dr. Downs on July 28, after learning that Martin was experiencing significant pain in his lower left jaw. That day, Dr. Downs prescribed Ultram (also known as Tramadol) for Martin to treat Martin's pain and Clindamycin to treat Martin's infection.

---

[2] In response to Dr. Downs's motion, Martin disputes the medical records that show that N.P. Buchanan preemptively ordered Ibuprofen for Martin during his recovery. (ECF No. 33, PageID.296.) The argument is, however, without merit because Martin fails to provide this information in an adequate affidavit or declaration. *See* 28 U.S.C. § 1746 (establishing requirements for submission of affidavit, declaration and related statements); Fed. R. Civ. P. 56(c)(4) (requiring an affidavit or declaration to set forth facts in support of or opposition to motion for summary judgment).

PATIENT: CHRISTIEN MARTIN
DATE OF BIRTH: ███
DATE: 07/28/2017 12:19 PM
INMATE ID: 794831

## SOAP NOTE

**Subjective:**
States has lower plate removed surgically yestrday. HAs pain in the lowr left jaw. "Just feel terrble" Staes has bacd headache since last night . Took 3-200 mg ibuprfen last night HAs not taken andy andy today -casued his fo feel worse. States has not eaten today

**Objective:**
Pt has tears. HAs swellingof tthe left lower jaw . Appears in pain. Mild swelling of the rtupper neck .

**Assessment:**
Alteration in comfort relater to recent dental surgery.

**Plan:**
Dr Downs DDS contacted by phone Orders for antibiotic adn pain medication - clindomycin 300 mg tid x 7 days adn ultram 50 mg 1 po tid prn. Will have RN recheck in am . Pt to lif any increase in swelling or if develops any difficluty with Meals/ roon lay in . Ice TID when comes for pain medication

Provider: Brenda L. Buchanan NP

Document generated by: Penny L. Filion, RN

. . . .

## ORDERS NOT COMPLETED

SITE: URF E
COMPLETED BY: Penny L. Filion, RN    07/28/2017 12:19 PM

CHRISTIEN MARTIN
07/28/2017 1:14 PM
INMATE ID: 794831

## VERBAL MEDICATION ORDERS REQUIRE ACTION

Accepting or Rejecting this document, will open the Verbal Medication Orders Template for provider action on all verbal medication orders.

**VERBAL MEDICATION ORDERS FOR CURRENT VISIT**

| Status  | Start Date | Stop Date  | Verbal Medication |
|---------|------------|------------|-------------------|
| ordered | 07/28/2017 | 07/30/2017 | ULTRAM 50 mg TABLET |
| ordered | 07/28/2017 | 08/03/2017 | CLINDAMYCIN HCL 150 mg CAPSULE |

Generated by: Penny L. Filion, RN, 07/28/2017 1:14 PM

**This document is used as a communication tool, and may not contain the final status of verbal medication orders.

. . . .

11

**MICHIGAN DEPARTMENT OF CORRECTIONS**

**NURSE PROTOCOL**

SITE: URF E
COMPLETED BY: Penny L. Filion, RN   07/28/2017 12:19 PM

Patient Name: CHRISTIEN MARTIN
DOB:
ID#: 794831

Patient presenting with chief complaint(s) of: Dental Care.

**Vital Signs:**

| Date | Time | Temp | Pulse | Pattern | Resp | Pattern | BP | Sp O2 | Peak Flow | Weight Lb |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/28/2017 | 12:20 PM | 98.5 | 64 | | 16 | | 127/87 | | | |

**Plan:**
**MEDICATIONS**

| Start | Stop | Medication | Dose | Rx Units | Issued | Sig Desc |
|---|---|---|---|---|---|---|
| 07/28/2017 | 08/03/2017 | Clindamycin Hcl | 150 Mg | | 16 | Take 1 by mouth 4 times a day |
| 07/28/2017 | 07/30/2017 | Ultram | 50 Mg | | 9 | 1 three times a day as needed |

**ORDERS**

| Status | Order | Reason | Date |
|---|---|---|---|
| ordered | Other: meals in/room lay in | | |
| ordered | Other: officer to call as needed for pain meds and ice | | |
| ordered | ULTRAM 50 mg TABLET | | |
| ordered | Nurse Visit : recheck rt jaw/neck swelling | | 07/29/2017 |
| ordered | CLINDAMYCIN HCL 150 mg CAPSULE | | |

Document generated by: Penny L. Filion, RN 07/28/2017 1:19 PM
Provider: Brenda L. Buchanan NP

(*Id.*, PageID.190-192.)

The Ultram prescription was intended to supplement the Ibuprofen Martin was already receiving. (ECF No. 27-3, PageID.119.)

Martin's claim is that Dr. Downs failed to treat his condition adequately. Thus, as stated in *Napier*, 238 F.3d at 742, Martin must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." He has not done so. Martin has shown that he suffered from an infection and the resulting pain. But the records show that Dr. Downs attempted to treat these issues. Based on those facts, it is the opinion of the undersigned that no genuine issue of material fact exists relating to the objective component of the deliberate indifference claim.

12

The undersigned reaches the same conclusion with regard to the subjective component. As noted in *Rhinehart*, 894 F.3d at 739, Martin has to show that Dr. Downs consciously exposed him to an excessive risk of serious harm. None of the information provided by Martin establishes a genuine issue of material fact as Dr. Downs's state of mind. Here, the record is clear that Dr. Downs did not possess "a sufficiently culpable state of mind" to deny Martin medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The medical records show that Dr. Downs was aware of Martin's medical situation and prescribed medication to address the issues that arose after surgery. (ECF No. 27-3, PageID.119-121; ECF No. 28, PageID.184-192, 196-197.)

In the opinion of the undersigned, no genuine issue of material fact exists relating to Martin's deliberate indifference claim against Dr. Downs.

### V.  Martin's Medical Malpractice Claim Against Dr. Downs

If the District Court grants Dr. Downs's motion for summary judgment, then Martin's only claim against Downs will be a state law medical malpractice claim. Supplemental jurisdiction over state law claims should not be exercised after all federal claims have been dismissed. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719 (6th Cir. 2006). Thus, the undersigned respectfully recommends that the District Court decline to exercise supplemental jurisdiction over Martin's medical malpractice claim against Downs.

## VI.  Goings and MacDonald's Motion for Summary Judgment Based on Failure to Exhaust Administrative Remedies

### A. Legal Standards

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215

14

F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. \_\_\_, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at \*12.

15

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[3], the inmate must first

---

[3] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are

raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at \*13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity'

---

"subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

> to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

**B. Analysis**

C.O. Goings and C.O. MacDonald argue that Martin's claims against them should be dismissed because Martin failed to exhaust his administrative remedies. They recognize that Martin's complaint makes allegations against Goings and MacDonald that are similar to the claims Martin made in **URF-17-07-2303-17z**. (ECF No. 30, PageID.220.) But Defendants argue that Martin's Step II grievance was filed well outside the deadline established by the MDOC, and, as a result, that Martin has not complied with MDOC policy. The undersigned agrees that Martin's Step II appeal was late. Nevertheless, a review of MDOC's Step III response suggests that Martin's appeal was not rejected at Step III, but, instead, was addressed on the merits.

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

18

> **STEP III GRIEVANCE DECISION**
>
> 100259
> 17Z
>
> To Prisoner: Martin #: 794831
> Current Facility: URF
> Grievance ID #: URF-17-07-2303-17Z
> Step III Received: 7/18/2018
>
> Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.
>
> **THE STEP III APPEAL IS DENIED.**
>
> THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.
>
> Richard D. Russell, Manager Grievance Section, Office of Legal Affairs
>
> Date Mailed: JUL 2 6 2018

(ECF No. 30-2, PageID.228.)

The MDOC Prisoner Step III Grievance Report associated with this grievance also indicates that the grievance was denied at Step III rather than rejected. (*Id.*, PageID.226.)

As explained in *Reed-Bey* and *Mattox*, when prison officials waive procedural irregularities and decide the grievance on the merits, a prisoner has exhausted his administrative remedies. *Reed-Bey*, 603 F.3d at 325; *Mattox*, 851 F.3d at 590-91. That appears to be what happened here. Accordingly, in the opinion of the undersigned, a genuine issue of material fact remains as to whether Martin

19

exhausted his administrative remedies. The undersigned respectfully recommends denial of the C.O.s' motion for summary judgment.[5]

## VII. Recommendation

The undersigned respectfully recommends that this Court (1) grant Dr. Downs' motion for summary judgment and dismiss Dr. Downs from the case, and (2) deny Correctional Officers Goings and MacDonald's motion for summary judgment. If the Court accepts this recommendation, Martin's Eighth Amendment deliberate indifference claims against C.O. Goings and C.O. MacDonald will remain.


Dated:   December 30, 2019            /s/ *Maarten Vermaat*
                                      MAARTEN VERMAAT
                                      U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[5]   If Defendants Going and MacDonald can prove that the MDOC's decision at Step III was actually an affirmation of the Step II rejection rather than a decision on the merits of Martin's grievance, then they may request a bench trial on that issue. *See Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015) (holding that "disputed issues of fact regarding exhaustion under the PLRA presented a matter of judicial administration that could be decided in a bench trial").